1  AHDOOT & WOLFSON, PC
   Robert Ahdoot (SBN 172098)
2  rahdoot@ahdootwolfson.com
   Tina Wolfson (SBN 174806)
3  twolfson@ahdootwolfson.com
   Keith Custis, Of Counsel (SBN 218818)
4  kcustis@ahdootwolfson.com
   1016 Palm Avenue
5  West Hollywood, California 90069
   Telephone: 310-474-9111
6  Facsimile: 310-474-8585

7  Attorneys for Plaintiff
     SARA LATTA
8

9                    **UNITED STATES DISTRICT COURT**

                     **EASTERN DISTRICT OF CALIFORNIA**
10

11  SARA LATTA, individually and on behalf    CASE NO. 2:15-313
    of all others similarly situated,
12                                            **CLASS ACTION COMPLAINT**
                  Plaintiff,
13                                            JURY TRIAL DEMANDED
            v.
14
    LUMBER LIQUIDATORS, INC., a
15  Delaware corporation, LUMBER
    LIQUIDATORS LEASING, LLC, a
16  Delaware limited liability corporation,
    LUMBER LIQUIDATORS HOLDING,
17  INC., a Delaware corporation, and
    LUMBER LIQUIDATORS SERVICES,
18  LLC, a Delaware limited liability
    corporation,
19
                  Defendants.
20

21

22

23

24

25

26

27

28

_____
                    CLASS ACTION COMPLAINT

1    Plaintiff Sara Latta ("Plaintiff"), by and through their counsel, bring this Class Action

2    Complaint against Defendant Lumber Liquidators Inc., Defendant Lumber Liquidators

3    Leasing, LLC, Defendant Lumber Liquidators Holding, Inc., and Defendant Lumber

4    Liquidators Services, LLC (collectively "Lumber Liquidators" or "Defendants"), and allege,

5    upon personal knowledge as to their own actions, and upon information and belief and the

6    investigation of their counsel as to all other matters, as follows:

7    <u>**NATURE OF THE CASE**</u>

8    1.    This is a consumer protection and false advertising class action. Lumber

9    Liquidators supervises and controls the manufacturing, and packages, distributes, markets

10   and sells a variety of Chinese-manufactured laminate wood flooring materials (the

11   "Products" or "Chinese Flooring") that it prominently advertises and warrants as fully

12   compliant with California's strict formaldehyde emission standards promulgated by the

13   California Air Resources Board ("CARB") and enumerated in California's Airborne Toxic

14   Control Measure to Reduce Formaldehyde Emissions from Composite Wood Products

15   ("CARB Regulations"). Cal. Code Regs. tit. 17, §§ 93120-93120.12. Those standards have

16   been adopted as the national standard by the Formaldehyde Standards for Composite-Wood

17   Products Act, 15 U.S.C. § 2697.

18   2.    Defendants also represent and advertise that their Chinese-manufactured

19   laminate wood flooring materials sold throughout the United States comply with the CARB

20   Regulations.

21   3.    Defendants' claims that the Products comply with CARB's standards for

22   formaldehyde emissions and "with all applicable laws, codes and regulations" are false. As

23   detailed herein, the Products emit formaldehyde gas at levels that exceed the strict limits set

24   forth in the CARB Regulations. Defendants also fail to disclose the unlawful level of

25   formaldehyde emission to consumers.

26   4.    Chinese-made flooring products have come under scrutiny in recent years.

27   According to the Hardwood Plywood and Veneer Association ("HPVA"), Chinese-made

28   flooring sold in North America is known to have higher than expected levels of

1   formaldehyde emissions.[1] The HPVA began testing the Chinese-made flooring and found

2   that "the levels of formaldehyde were so high… some were two to three times over the

3   line."[2] Indeed, China is now the largest manufacturer of formaldehyde products and "more

4   than 65% of the Chinese formaldehyde output is used to produce resins mainly found in

5   wood products."[3]

6          5.      In an attempt to allay safety concerns regarding its Chinese-made flooring

7   products, Defendants uniformly claim that all of its hardwood and laminate flooring products

8   are compliant with the California Air Resources Board's ("CARB") standards for safe

9   formaldehyde emissions. On its website, Defendant states: "commitment to quality and

10  safety extends to everywhere we do business. We require that all of our suppliers comply

11  with California's advanced environmental requirements, even for products sold outside

12  California."[4] As described herein, the packaging for all Lumber Liquidators' Chinese-made

13  flooring products claim that the products are compliant with California CARB formaldehyde

14  standards.

15         6.      Despite assurances that its flooring products are safe and comply with

16  California formaldehyde regulations, several reports have shown that Lumber Liquidators'

17  Chinese-made flooring products actually contain levels of formaldehyde that exceed the

18  CARB standards. On March 1, 2015, 60 Minutes news aired a story dispelling Lumber

19  Liquidators' claims that its flooring products are compliant with California formaldehyde

20  standards. The news story was prompted by an investigation that was conducted by two

---

21  [1] Gil Shochat, High Levels of formaldehyde found in Chinese-made floors sold in North
22  America,    GLOBAL    NEWS    (Oct.    3,    2014),    available    at
    http://globalnews.ca/news/1594273/high-levels-of-formaldehyde-found-in-chinese-
23  madefloors-sold-in-north-america/ (last visited March 5, 2015).

    [2] *Id.*
24
    [3] Xiaojiung Tang et al., Formaldehyde in China: Production, consumption, exposure levels,
25  and health effects, ENVIRONMENTAL INTERNATIONAL VOLUME 36, ISSUE 3 (April
    2010), available at http://ac.els-cdn.com/S0160412009002402/1-s2.0-S0160412009002402-
26  main.pdf?_tid=dd4df5ba-c1ea-11e4-9b60-
    00000aab0f6b&acdnat=1425417700_25414e62d2ab566a9dd77bde3169e4cc    (last    visited
27  March 5, 2015).

    [4] *See* http://www.lumberliquidators.com/sustainability/health-and-safety/ (last visited March 5,
28  2015).

CLASS ACTION COMPLAINT

1  environmental advocacy groups. The environmental groups purchased more than 150 boxes

2  of Lumber Liquidators' laminate flooring at stores around California and sent the boxes to

3  three certified labs for a series of tests. The results showed that "every single sample of

4  Chinese-made laminate flooring from Lumber Liquidators failed to meet California

5  formaldehyde emissions standards. Many by a large margin."[5]

6      7.      The results of that investigation prompted 60 Minutes news to conduct its own

7  independent investigation into Lumber Liquidators' Chinese-made Flooring. The 60 Minutes

8  news team went to stores in Virginia, Florida, Texas, and New York and purchased 31 boxes

9  of Lumber Liquidators' Chinese-made flooring.  60 Minutes sent the sample for testing at

10  two certified labs. "It turns out of the 31 samples of Chinese-made laminate flooring, only

11  one was compliant with formaldehyde emissions standards. Some were more than 13x over

12  the California limit."[6]   Both of the labs told 60 Minutes that they had never seen

13  formaldehyde levels that high.

14      8.      60 Minutes then sent undercover investigators with hidden cameras to the city

15  of Changzhou, China. The investigators posed as buyers and visited three different mills that

16  manufacture laminates and flooring on behalf of Defendant. The results of the undercover

17  investigation were alarming:

18          Employees at the mills **openly admitted** that they used core boards with higher
19          levels of formaldehyde to make Lumber Liquidators laminates, saving the
            company 10-15 percent on the price. At all three mills they also admitted
20          falsely labeling the company's laminate flooring as CARB compliant.[7]

21      9.      Lumber Liquidators' illegal behavior with respect to its manufacturing,

22  marketing, and sale of Chinese Flooring has caused Plaintiff and the other Class members to

23  suffer direct financial harm. Plaintiff's purchase is markedly less valuable because of its

24  elevated level of formaldehyde. Plaintiff would have paid significantly less, if he purchased

25  Chinese Flooring at all, had he known that the product contained elevated levels of the toxin

26  _____
    [5] *Lumber Liquidators Linked to Health and Safety Violations*, 60 MINUTES (Mar. 1, 2015),
27  available      at      http://www.cbsnews.com/news/lumber-liquidators-linked-to-health-and-
    safetyviolations/ (last visited March 5, 2015).
    [6] *Id.*
28  [7] *Id.* (emphasis added).

CLASS ACTION COMPLAINT

1    formaldehyde.

2        10.    Plaintiff asserts claims individually and on behalf of the other members of

3    the  proposed Class.

4                                              **PARTIES**

5        11.    Plaintiff Sara Latta is a resident of Sacramento County, California. Plaintiff

6    owns a home in Sacramento, California in which Lumber Liquidators' Chinese Flooring is

7    installed. In July 2014, Plaintiff purchased 12 mm St. James Laminate flooring from Lumber

8    Liquidators and installed it in her home.

9        12.    Defendant Lumber Liquidators, Inc. is a corporation organized under the State

10   of Delaware's Corporation Law with its principal place of business at 3000 John Deere Road,

11   Toano, Virginia 23168. Defendant Lumber Liquidators, Inc. markets, advertises, distributes

12   and sells the Products to consumers throughout Oklahoma and the United States.

13       13.    Defendant Lumber Liquidators Leasing, LLC, is a Delaware Limited Liability

14   Corporation with its principal place of business at 3000 John Deere Road, Toano, Virginia

15   23168.

16       14.    Defendant Lumber Liquidators Holding, Inc., is a Delaware corporation with

17   its principal place of business at 3000 John Deere Road, Toano, Virginia 23618.

18       15.    Defendant Lumber Liquidators Services, LLC, is a Delaware Limited

19   Liaiblity Corporation with its principal place of business at 3000 John Deere Road, Toano,

20   Virginia 23168.

21                              **JURISDICTION AND VENUE**

22       16.    The Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), the

23   Class Action Fairness Act, because the matter in controversy exceeds the sum or value of

24   $5,000,000 exclusive of interest and costs and because more than two-thirds of the members of

25   the class reside in states other than the state in which Defendants reside.

26       17.    This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because

27   Plaintiff is a resident of California and Defendants are Delaware Corporations that maintain

28   their principal place of business in Virginia. The amount in controversy in this action exceeds

the sum or value of $75,000.

18.     This Court has personal jurisdiction over Defendants because they conduct business in California and otherwise intentionally avail themselves of the markets in California to render the exercise of jurisdiction by this Court proper. Defendants have marketed, promoted, distributed, and sold the Products in California and throughout the United States.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the alleged claims occurred in this District given that Plaintiff resides in this District and Lumber Liquidators markets, promotes, distributes and sells the Products in this District.

## FACTUAL ALLEGATIONS

### A.     Lumber Liquidators

20.     Lumber Liquidators is one of the largest specialty retailers of hardwood flooring in the United States, with over 300 retail stores in 46 states. Lumber Liquidators sells primarily to homeowners directly or to contractors acting on behalf of homeowners. Consumers may also purchase the Company's products online, and any purchases made over the Internet are shipped to the Lumber Liquidators retail location of the customers choosing.

21.     Lumber Liquidators prides itself on having one of the largest inventories of prefinished and unfinished hardwood floors in the industry. Lumber Liquidators carries solid and engineered hardwood, laminate flooring, bamboo flooring, cork flooring and resilient vinyl flooring, butcher blocks, molding, accessories, and tools.

22.     Lumber Liquidators represents that it negotiates directly with the lumber mills, eliminating the middleman and passing the savings on to its customers.  As detailed herein, one of the primary reasons Lumber Liquidators has grown so quickly and its profits have surged has been through the Company's misrepresentations about the formaldehyde levels of its products.

### B.     Formaldehyde in Wood Flooring

23.     Formaldehyde is a colorless, and strong smelling gas. According to the Occupational Safety and Health Administration ("OSHA"), formaldehyde is "commonly used

5

a preservative in medical laboratories and mortuaries, formaldehyde is also found in many products such as chemicals particle board, household products, glues, permanent press fabrics, paper product coatings, fiberboard, and plywood." At high exposure levels, "formaldehyde is a sensitizing agent that can cause and immune system response upon initial exposure. It is also a cancer hazard."[8] Formaldehyde exposure can be irritating to the eyes, nose, and throat and severe allergic reactions may occur in the skin, eyes, and respiratory tract.[9]

24. When wood flooring is manufactured, layers of wood particles are "pressed together and sealed with adhesives containing urea formaldehyde resin" ("UFR"). UFR is "highly water-soluble and therefore is the most problematic mixture for indoor air pollution."

25. Pressed-wood products, like hardwood plywood and particleboard, are considered a major source of indoor formaldehyde emissions.

26. All of the Lumber Liquidators Chinese-made Flooring Products contain a UFR formaldehyde or other formaldehyde resin.

**C.      CARB Regulations Regarding Formaldehyde**

27. The California Air Resource Board, or "CARB," is a department of the California Environmental Protection Agency. CARB oversees all air pollution control efforts in California to maintain air quality standards.

28. In January of 2009, CARB promulgated regulations called the Airborne Toxic Control Measure to Reduce Formaldehyde Emissions from Composite Wood Products. *See* 17 California Code of Regulations ("CCR") §§ 93120-93120.12 (the "CARB Regulations"). The CARB Regulations apply to various wood products, including wood flooring products.  Phase 2 of the CARB regulations mandate that composite wood products sold in the State of California must emit no more than between 0.05 parts per million and 0.13 parts per million of formaldehyde depending on whether the product is classified as a type of hardwood plywood or medium density fiberboard.

---

[8]  https://www.osha.gov/OshDoc/data_General_Facts/formaldehyde-factsheet.pdf (last visited March 5, 2015).
[9] *Id.*

29.     On July 7, 2010, the federal Formaldehyde Standards for Composite Wood Products Act of 2010 was signed into law by President Obama. *See* 15 U.S.C. § 2697.

30.     Significantly, the federal Formaldehyde Standards Act adopted the same standards established by CARB as a nationwide standard.[10]   The comment period for the Environmental Protection Agency's proposed rules governing this statute is now closed and implementing regulations are expected to be released sometime this year.

**D.     Lumber Liquidators' Chinese-Made Composite Wood Flooring**

31.     Lumber Liquidators has distributed, marketed, and sold various laminate flooring products that are manufactured in China (the "Chinese-Made Flooring Products").

32.     Specifically, the Chinese-made Flooring Products include, but are not limited to:

      a.     8 mm Bristol County Cherry Laminate Flooring;

      b.     8 mm Dream Home Nirvana Royal Mahogany Laminate Flooring;

      c.     8 mm Dream Home Nirvana French Oak Laminate Flooring;

      d.     12 mm Dream Home Ispiri Poplar Forest Oak Laminate Flooring;

      e.     12 mm Dream Home Kensington Manor Antique Bamboo Laminate Flooring;

      f.     12 mm Dream Home St. James Oceanside Plank Laminate Flooring;

      g.     12 mm Dream Horne Kensington Manor Warm Springs Chestnut Laminate Flooring;

      h.     15 mm Dream Home St. James Sky Lakes Pine Laminate Flooring;

      i.     12 mm Dream Home Kensington Manor Imperial Teak Laminate Flooring;

      j.     12 mm Dream Home St. James Vintner's Reserve Laminate Flooring;

      k.     12 mm Dream Home Kensington Manor Cape Doctor Laminate Flooring;

---

[10] http://www2.epa.gov/formaldehyde/formaldehyde-emission-standards-composite-woodproducts#Formaldehyderegs (last visited March 5, 2015).

l.   12 mm Dream Home St. James Golden-Acacia Laminate Flooring;

m.   12 mm Dream Home Kensington Manor Sandy Hills Hickory Laminate Flooring;

n.   12 mm Dream Horne Kensington Manor Tanzanian Wenge Laminate Flooring;

o.   12 mm Dream Home Ispiri America's Mission Olive Laminate Flooring;

p.   12 mm Dream Home Kensington Manor Golden Teak Laminate Flooring;

q.   12 mm Dream Home Kensington Manor Summer Retreat Teak Laminate Flooring;

r.   12 mm Dream Horne Kensington Manor Glacier Peak Poplar Laminate Flooring;

s.   12 mm Dream Home St. James Brazilian Koa Laminate Flooring;

t.   12 mm Dream Home St. James Blacksburg Barn Board Laminate Flooring;

u.   12 mm Dream Home St. James Nantucket Beech Laminate Flooring;

v.   12 mm Dream Home St. James Chimney Rock Charcoal Laminate Flooring;

w.   12 mm Dream Home St. James African Mahogany Laminate Flooring;

x.   12 mm Dream Home Kensington Manor Fumed African Ironwood Laminate Flooring.

y.   12 mm Dream Home St. James Oceanside Plank Bamboo Laminate Flooring;

z.   12 mm Dream Home Kensington Manor Warm Springs Chestnut Laminate Flooring;

aa.   15 mm Dream Home St. James Sky Lakes Pine Laminate Flooring;

bb.   12 mm Dream Home Ispiri Chimney Tops Smoked Oak Laminate

8

Flooring;

     cc.    12 mm Dream Home Kensington Manor Imperial Teak Laminate Flooring;

     dd.    12 mm Dream Home St. James Cumberland Mountain Oak.

33.    The Lumber Liquidators Chinese-made Flooring Products state in a uniform manner on the packaging that they are "California 93120 Phase 2 Compliant for Formaldehyde," which indicates that the Chinese Flooring Products meet the CARB emission standards for formaldehyde.[11]  This statement is false and misleading for the reasons described herein.

34.    On the Lumber Liquidators website, Defendants also make false and misleading statement about their CARB compliance:

**Is Lumber Liquidators Compliant with the California law?**

Laminate and engineered flooring products sold by Lumber Liquidators are purchased from mills whose production method has been certified by a Third Party Certifier approved by the State of California to meet the CARB standards. The scope of the certification by the Third Party Certifier includes the confirmation that the manufacturer has implemented the quality systems, process controls, and testing procedures outlined by CARB and that their products conform to the specified regulation limits. The Third Party Certifier also provides ongoing oversight to validate the manufacturers' compliance and manufacturers must be periodically re-certified.

**Does CARB only apply to California?**

Though it currently applies only to products sold in California, Lumber Liquidators made a decision to require all of our vendors to comply with the California Air Resources Board regulations regardless of whether we intended to sell the products in California or any other state/country.[12]

---

[11] http://www.arb.ca.gov/toxics/compwood/consumer_faq.pdf (explaining that "Manufactures typically will label their products as 'California 93120 Compliant for Formaldehyde' or 'California Phase 2 Compliant' if the products meet the stringent CARB regulations for formaldehyde.") (last visited March 5, 2015).
[12] *See* http://www.lumberliquidators.com/ll/flooring/ca-air-resources-board-regulations?Wt.ad=GLOBAL_FOOTER_CaliRegCARB (last visited March, 5, 2015).

CLASS ACTION COMPLAINT

35.     In addition, the product packaging for the Products states: "CARB …Phase 2 Compliant for Formaldehyde." On information and belief, this statement is presented on all of Lumber Liquidators' Products regardless of whether the flooring inside the package complied with CARB Regulations.



36.     According to CARB, "The label seen on panels and finished goods indicates that the product meets the California Air Resources Board's (CARB) stringent emission standards for formaldehyde emissions from composite wood products, including HWPW, PB, and MDF."

37.     Lumber Liquidators' purchase orders come with a warranty from the manufacturers/packagers stating that the Products comply "with all applicable laws, codes and regulations," and "bear all warnings, labels, and markings required by applicable laws and regulations."[13]  These representations also are false.

38.     Lumber Liquidators' website also guarantees the "highest quality" flooring, and states (emphasis in the original):

> 1) INSPECTION - We inspect your flooring at every stage:
> before it's finished, during production, and as it's shipped. Our

---

[13] See www.lumberliquidators.com//ll/customer-care/potc800201 (last visited March 5, 2015).

CLASS ACTION COMPLAINT

Quality Assurance team operates on three continents, seven countries, and in mills around the world. In fact, on a typical day, a production inspector will walk 12 miles up and down the finishing line to ensure you get only the best.

2) COMPLIANCE - We not only comply with laws - we exceed them. For example, California has the highest standards regarding laminate and engineered flooring. All of our mills that produce these products are certified by a Third Party approved by the State of California - and we apply these standards nationwide.

3) TESTING - We are continually investing in, testing, evaluating and assuring the highest quality. Our Quality Assurance team includes certified Six Sigma professionals with Master's Degrees in Quality Management and various team members with degrees in Biology, Chemistry, Wood Science and Engineering. They work around the world to test your flooring at every stage. We also regularly send product out to an independent lab for additional testing to ensure quality.[14]

39. Instead of warning consumers about formaldehyde emissions from its laminate wood flooring products, Lumber Liquidators' website states that it has Third Party Certifiers approve its flooring products to meet CARB standards:

**All laminates and engineered flooring products sold by Lumber Liquidators are purchased from mills whose production method has been certified by a Third Party Certifier approved by the State of California to meet the CARB standards.** The scope of the certification by the Third Party Certifier includes the confirmation that the manufacturer has implemented the quality systems, process controls, and testing procedures outlined by CARB and that their products conform to the specified formaldehyde emission limits. The Third Party Certifier also provides ongoing oversight to validate the manufacturers' compliance and manufacturers must be periodically re-certified.[15]

40. Lumber Liquidators materially misrepresents the safety of its laminate wood

---

[14] *See* http://web.archive.org/web/20130731042457/http://www.lumberliquidators.com/ll/flooring/Quality (emphasis added) (last visited March 5, 2015).

[15] *See* Formaldehyde-What is it? Regulations and Lumber Liquidators' Compliance, available at http://server.iad.liveperson.net/hc/s-13045352/cmd/kbresource/kb-752012092953572339/view_question!PAGETYPE?sf=101133&documentid=415037&action=view (last visited March 5, 2015).

11

CLASS ACTION COMPLAINT

flooring products by advertising its flooring products as compliant with the CARB limit when in fact they are not.

41.     Lumber Liquidators makes the material omission of failing to tell consumers that they are buying laminate wood flooring products with unlawfully high levels of formaldehyde.

42.     However, Lumber Liquidators does not comply with CARB regulations when selling and distributing the Chinese-made Flooring Products. Several independent tests conducted by certified laboratories reveal that the Chinese Flooring Products emit formaldehyde levels well beyond what is allowable by CARB regulations. These test results have shown that average formaldehyde exposures during testing exceeded the 0.05 to 0.11 parts per million as allowed under CARB regulations set forth in 17 CCR §§ 93120-93120.12, *et seq*.

43.     Lumber Liquidators' Chinese-made flooring was first called into question in June of 2013 when a blogger named Xuhua Zhou reported on the website Seeking Alpha the results of his independent investigation. Zhou sent samples of Lumber Liquidators' Flooring to be tested by independent laboratories and posted the results online. As Zhou explained:

> I recently conducted independent lab testing –engaging Berkeley Analytical, an IAS accredited testing laboratory – on a sample of Lumber Liquidators house brand flooring ("Mayflower" brand), and the results that came back weren't pretty: Over 3.5x the maximum legal level for formaldehyde. Fully understanding the importance of this finding, we submitted samples from the same package to a second laboratory, this one the "gold standard" lab for the National Wood Flooring Association, NTW. The second lab confirms the product is in violation of the legal limit for formaldehyde.[16]

44.     Another set of tests on Lumber Liquidators' Chinese-made flooring were conducted by the environmental advocacy groups Global Community Monitor and Sunshine Park, LLC. The two companies have filed suit in the California Superior Court for the County

---

[16] Xuhua Zhou, Illegal Products Could Spell Big Trouble at Lumber Liquidators, SEEKING ALPHA, (Jun. 20, 2013) http://seekingalpha.com/article/1513142-illegal-products-couldspell-big-trouble-at-lumber-liquidators (last visited March 5, 2015).

CLASS ACTION COMPLAINT

of Alameda against Lumber Liquidators for its alleged violation of the California Safe Drinking Water and Toxic Enforcement Act of 1986 commonly known as "Proposition 65" ("The Global Community Monitor Lawsuit.") The complaint states that the groups conducted over fifty tests using various test methods and two different laboratory locations. Test results showed average exposures of formaldehyde at the time of testing exceeded 4,000 micrograms per day ("ug/day) over 100 times above the 40 ug/day threshold established by California's Proposition 65.

45.     In accordance with California Health and Safety Code Section 25249.6, an attorney representing Global Community Monitor submitted a Certificate of Merit certifying that he consulted with persons who have the relevant and appropriate experience before filing suit. His consultants determined that there is a "reasonable and meritorious case for the private action" against Lumber Liquidators based on its sales of Chinese-made Flooring Products. The Global Community Monitor Lawsuit seeks injunctive relief and civil penalties as allowed by Proposition 65.

46.     The most recent investigation into Lumber Liquidators flooring was conducted by 60 Minutes News. 60 Minutes purchased 31 boxes of Chinese-made Flooring Products form Lumber Liquidators stores in five different states and sent samples to two certified labs for testing. Out of the 31 samples, only one was found to be compliant with CARB formaldehyde emissions standards. Some were even more that 13x over the California limit.

47.     Moreover, manufacturers in China admitted on camera to 60 Minutes News that the Chinese-made Flooring Products sold by Lumber Liquidators are not complaint with CARB regulations. A transcript from the 60 Minutes news report reads as follows:

> Posing as buyers, and using hidden cameras, the investigators visited three different mills that manufacture laminates for Lumber Liquidators.
>
> Employees at the mills openly admitted that they use core boards with higher levels of formaldehyde to make Lumber Liquidators laminates, saving the company 10-15 percent on the price. At all three mills they also admitted falsely labeling the company's laminate flooring as CARB 2, meaning it meets California

1    formaldehyde emissions standards, and the new U.S. federal
     law.

2
3    At this factory, the general manager told investigators Lumber
     Liquidators is one of their biggest customers.

4        Manager:        This is a best-seller for Lumber Liquidators.

5        Investigator:   For Lumber Liquidators?

6        Manager:        Yeah.

7        Investigator:   How long have you been selling this?

8
     Manager:        From last year.
9
     Investigator:   Is this CARB 2?
10
     Manager:        No, no, no . . . I have to be honest with you. It's
11                       not CARB 2.

12       Investigator:   Can I get CARB 2?

13       Manager:        Yes, you can. It's just the price issue. We can
14                           make CARB 2 but it would be very
     expensive.
15
     And that's the same thing the undercover team was told at all
16   three mills they visited.

17       Investigator:   All this stuff here, Lumber Liquidators... All
18                           their labeling is CARB 2 right? But it's
     not                   CARB 2?
19
         Employee:       Not CARB 2.[17]
20
21       48.    Plaintiff and other Class members would not have purchased the Chinese

22   Flooring Products if they had known that the products were not compliant with CARB and that

     the Products emit unlawful levels of formaldehyde.
23
     E.    **Plaintiff's Reliance and Damages**
24
25       49.    During the relevant time period, Plaintiff purchased 12 mm St. James Laminate

26   from Lumber Liquidators at a Lumber Liquidators store located in California. On information

27   ────────────────────
     [17] *Lumber Liquidators Linked to Health and Safety Violations*, 60 MINUTES (Mar. 1, 2015),
28   available    at    http://www.cbsnews.com/news/lumber-liquidators-linked-to-health-and-
     safetyviolations/ (last visited March 5, 2015).

and belief, the flooring was produced at a laminate mill in China.

50.     At the time that Plaintiff purchased this laminate wood flooring, Lumber Liquidators falsely represented that the product was compliant with CARB formaldehyde emission standards and was defect free. At the time of the purchase, Lumber Liquidators also failed to inform Plaintiff that the laminate wood flooring product she purchased actually exceeded the CARB formaldehyde emission-limit and that formaldehyde is a chemical known to the State of California to cause cancer.

51.     Plaintiff relied on Lumber Liquidators' misrepresentations/omissions regarding compliance with CARB formaldehyde emission standards when deciding to purchase the laminate wood flooring products and, as a result, paid Lumber Liquidators for a product she would not have otherwise purchased.

52.     If Lumber Liquidators' laminate wood flooring becomes CARB compliant, Plaintiff would likely purchase it in the future.

53.     Plaintiff paid for CARB compliant products, but received products that were not CARB compliant. By purchasing Products in reliance on advertising that is false, Plaintiff has suffered injury in fact and lost money as a result of the unfair business practices alleged here.

**F.     Tolling Of The Statute Of Limitations, Fraudulent Concealment, Equitable Tolling And Continuing Violations**

54.     Plaintiff did not discover, and could not have discovered, through the exercise of reasonable diligence, the existence of the claims sued upon herein until immediately prior to commencing this civil action.

55.     Any applicable statutes of limitation have been tolled by Defendant's affirmative acts of fraudulent concealment and continuing misrepresentations, as the facts alleged above reveal.

56.     Because of the self-concealing nature of Defendant's actions and its affirmative acts of concealment, Plaintiff asserts the tolling of any applicable statutes of limitations affecting the claims raised herein, on her behalf and on behalf of all other Class members.

57.     Defendant continues to engage in the deceptive practice, and consequently, unwary consumers are injured on a daily basis by Defendant's unlawful conduct. Therefore, Plaintiffs and the Classes submit that each instance that Defendant engaged in the conduct complained of herein and each instance that a member of any Class purchased the Product constitutes part of a continuing violation and operates to toll the statutes of limitation in this action.

58.     Defendant is estopped from relying on any statute of limitations defense because of their unfair or deceptive conduct.

59.     Defendant's conduct was and is, by its nature, self-concealing. Still, Defendant, through a series of affirmative acts or omissions, suppressed the dissemination of truthful information regarding their illegal conduct, and actively has foreclosed Plaintiff and the Classes from learning of their illegal, unfair, and/or deceptive acts. These affirmative acts included concealing that the Products are not CARB compliant.

60.     By reason of the foregoing, the claims of Plaintiff and the Classes are timely under any applicable statute of limitations, pursuant to the discovery rule, the equitable tolling doctrine, and fraudulent concealment.

## CLASS ACTION ALLEGATIONS

61.     Plaintiff seeks relief in her individual capacity and as a class representative of all others who are similarly situated. Pursuant to Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3), Plaintiff seeks certification of the following Nationwide and California Classes.

62.     The Nationwide Damages Class is initially defined as follows:

> All persons residing in the United States who, during the applicable statute of limitations period through the date notice is disseminated to the Class, purchased from Lumber Liquidators one or more laminate wood flooring products that were for their personal use rather than for resale or distribution, that were manufactured in China, and that were advertised as being CARB compliant.

63.     The Nationwide Injunctive Relief Only Class is initially defined as follows:

> All persons residing in the United States who, during the

CLASS ACTION COMPLAINT

applicable statute of limitations period through the date notice is disseminated to the Class, purchased from Lumber Liquidators one or more laminate wood flooring products that were for their personal use rather than for resale or distribution, that were manufactured in China, and that were advertised as being CARB compliant.

64.     The <u>California Class</u> is initially defined as follows:

All persons residing in the State of California who, during the applicable statute of limitations period through the date notice is disseminated to the Class, purchased from Lumber Liquidators one or more laminate wood flooring products that were for their personal use rather than for resale or distribution, that were manufactured in China, and that were advertised as being CARB compliant.

65.     Excluded from each of the above Classes are Defendant, including any entity in which Lumber Liquidators has a controlling interest, is a parent or subsidiary, or which is controlled by Defendant, as well as the officers, directors, affiliates, legal representatives, predecessors, successors, and assigns of Defendant. Also excluded are the judges and court personnel in this case and any members of their immediate families, as well as any person who purchased the Product for the purpose of resale.

66.     Plaintiff reserves the right to amend or modify the Class definitions with greater specificity or division into subclasses after having had an opportunity to conduct discovery.

67.     <u>Numerosity</u>. Fed. R. Civ. P. 23(a)(1). Each Class is so numerous that joinder of all members is unfeasible and not practicable. While the precise number of Class members has not been determined at this time, Plaintiff is informed and believe that many thousands or millions of consumers have purchased the Products.

68.     <u>Commonality</u>. Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to each Class, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

a.     Whether Lumber Liquidators' laminate wood flooring products sold exceed the CARB limit;

b.     Whether Lumber Liquidators' claim that its laminate wood flooring products-

17

comply with the CARB limit is false;

c. Whether Lumber Liquidators uniformly conveyed to the classes that the Products complied with CARB regulations;

d. Whether Lumber Liquidators failed to disclose material information regarding the emission of unlawful levels of formaldehyde from its laminate wood flooring products;

e. Whether Lumber Liquidators' representations that its laminate wood flooring products comply with the CARB limit are material, as judged by an objective standard;

f. Whether Lumber Liquidators violated California Civil Code §§ 1750, *et seq.*;

g. Whether Lumber Liquidators violated California Business and Professions Code §§ 17200, *et seq.*;

h. Whether Lumber Liquidators violated California Business and Professions Code §§ 17500, *et seq.*;

i. Whether Lumber Liquidators breached express and implied warranties;

j. Whether Lumber Liquidators breached an express and implied warranties;

k. Whether Lumber Liquidators was unjustly enriched;

l. The nature of the relief, including equitable relief, to which Plaintiff and the Class members are entitled.

69. <u>Typicality</u>. Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of the Class. Plaintiff and all Class members were exposed to uniform practices and sustained injury arising out of and caused by Lumber Liquidators' unlawful conduct.

70. <u>Adequacy of Representation</u>. Fed. R. Civ. P. 23(a)(4). Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff's Counsel are competent and experienced in litigating class actions.

71. <u>Superiority of Class Action</u>. Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Class is impracticable. Furthermore, the adjudication of this

18

1   controversy through a class action will avoid the possibility of inconsistent and potentially
2   conflicting adjudication of the asserted claims. There will be no difficulty in the management
3   of this action as a class action.

4        72.    <u>Injunctive and Declaratory Relief</u>. Fed. R. Civ. P. 23(b)(2). Lumber
5   Liquidators' misrepresentations are uniform as to all members of the Class. Lumber
6   Liquidators has acted or refused to act on grounds that apply generally to the Class, so that
7   final injunctive relief or declaratory relief is appropriate with respect to the Class as a whole.

8   **FIRST CAUSE OF ACTION**
9   **Breach of Express Warranty**
10   **(On Behalf of Plaintiff And All Classes)**

11        73.    Plaintiff incorporates all preceding factual allegations as if fully set forth
12   herein.

13        74.    Lumber Liquidators warranted that its flooring was free of defects when it sold
14   those products to Plaintiff and other Class members as described in this Complaint. Lumber
15   Liquidators further represented that its flooring products complied with CARB and EU
16   formaldehyde standards and all applicable laws and regulations. Plaintiff and other Class
17   members reasonably relied upon Lumber Liquidators' representations and/or omissions.

18        75.    Lumber Liquidators' warranties became part of the basis of the bargain.

19        76.    Lumber Liquidators breached its warranties by:

20        a.    Manufacturing, selling and/or distributing flooring that exceeds the
21        CARB and EU formaldehyde standards;

22        b.    Manufacturing, importing, selling and/or distributing flooring that fails
23        to comply with all applicable laws and regulations; and

24        c.    Refusing to honor the express warranty by refusing to properly repair or
25        replace the defective flooring.

26        77.    All conditions precedent to seeking liability under this claim for breach of
27   express warranty have been performed by Plaintiff and other Class members who paid for the
28   Products at issue.

1    78.    Any attempt by Defendants to disclaim its express warranties is both

2    procedurally and substantively unconscionable, did not conform to the law and was not

3    conspicuous as required by law.

4    79.    On March 6, 2015, Plaintiff provided notice to Lumber Liquidators of its

5    breaches of express warranty.  Prior to that date, Lumber Liquidators was on notice regarding

6    the excessively high levels of formaldehyde in its flooring because of the numerous blog

7    postings, consumer complaints and lawsuits asserted against Defendant, as well as the March

8    1, 2015 60 Minutes report.

9    80.    Thus, Lumber Liquidators has had actual and/or constructive notice that its

10    express warranty were and are false and to date has taken no action to remedy its breaches of

11    express warranty.

12    81.    Defendant's breaches of warranty have caused Plaintiff and Class members to

13    suffer injuries, paying for falsely labeled products, and entering into transactions they would

14    not have entered into for the consideration that Plaintiff and Class members paid.  As a direct

15    and proximate result of Defendant's breaches of warranty, Plaintiff and Class members have

16    suffered damages and continue to suffer damages, including economic damages in terms of the

17    difference between the value of the Products as promised and the value of the Products as

18    delivered.

19    82.    As a result of the breach of these warranties, Plaintiff and Class members are

20    entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission,

21    and/or other relief as deemed appropriate, for an amount to compensate them for not receiving

22    the benefit of their bargain.

23    **SECOND CAUSE OF ACTION**

24    **Breach of Implied Warranties**

25    **(On Behalf of Plaintiff And All Classes)**

26    83.    Plaintiff incorporates all preceding factual allegations as if fully set forth

27    herein.

28    84.    At all times relevant hereto, there was a duty imposed by law which requires

that a manufacturer or seller's product be reasonably fit for the purposes for which such products are used and that the product be acceptable in trade for the product description.

85.     Defendants breached this duty by selling flooring to Plaintiff and the other members of the Class that was not merchantable.

86.     Defendants were notified that its product was not merchantable within a reasonable time after the defect manifested itself to Plaintiff and the members of the Class.

87.     Any attempt by Defendants to disclaim its express warranties is both procedurally and substantively unconscionable, did not conform to the law and was not conspicuous as required by law.

88.     As a result of the non-merchantability of Lumber Liquidators' flooring described herein, Plaintiff and other members of the Class sustained a loss or damages.

## THIRD CAUSE OF ACTION

### Violation of the Magnuson-Moss Warranty Act

89.     Plaintiff incorporates all preceding factual allegations as if fully set forth herein.

90.     Plaintiff and the other Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

91.     Lumber Liquidators is a "supplier" and "warrantor" within the meaning of 15 U.S.C. §§ 2301(4)-(5).

92.     Lumber Liquidators flooring purchased separate from the initial construction of the structure constitutes a "consumer product" within the meaning of 15 U.S.C. § 2301(1).

93.     Lumber Liquidators' express warranties and written affirmations of fact regarding the nature of the flooring, including that the flooring was free from defects and was in compliance with CARB and EU formaldehyde standards and all other applicable laws and regulations, constitute written warranties within the meaning of 15 U.S.C. § 2301(6).

94.     Lumber Liquidators breached their warranties by:

        a.      Manufacturing, selling and/or distributing flooring that exceeds the CARB formaldehyde standards;

b.     Manufacturing, importing, selling and/or distributing flooring that fails to comply with all applicable laws and regulations; and

c.     Refusing to honor the express warranty by refusing to properly repair or replace the defective flooring.

95.    Lumber Liquidators' breach of its express warranties deprived Plaintiff and the other Class members of the benefits of their bargains.

96.    Any attempt by Defendant to disclaim its express warranties is both procedurally and substantively unconscionable, did not conform to the law and was not conspicuous as required by law.

97.    As a direct and proximate result of Lumber Liquidators' breaches of its written warranties, Plaintiff and the other Class members sustained damages in an amount to be determined at trial. Lumber Liquidators' conduct damaged Plaintiff and the other Class members, who are entitled to recover damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, rescission, and/or other relief as appropriate.

**FOURTH CAUSE OF ACTION**

**Negligence**

**(On Behalf of Plaintiff And All Classes)**

98.    Plaintiff incorporates all preceding factual allegations as if fully set forth herein.

99.    Lumber Liquidators were under a legal duty to exercise reasonable care to design, manufacture and distribute Chinese Flooring that would conform to all industry standards and codes.

100.   Lumber Liquidators breached its legal duty and was negligent in its design and/or manufacturer of its Chinese Flooring described herein. Lumber Liquidators' design and/or manufacture of the Chinese Flooring is inherently defective, in that the flooring emits unsafe levels of formaldehyde, causing damage to Plaintiff's and the Class Members' person and residences/structures as well as other property throughout the residences/structures.

101.   As a result of the defects described herein, Plaintiff and Class Members' homes

CLASS ACTION COMPLAINT

contain unsafe and dangerous levels of formaldehyde gas.

102.   As a result of Lumber Liquidators' practices, Plaintiff's and the Class Members' residences contain defective and dangerous Chinese Flooring that require replacement as well as repair of damages and other property incidental thereto.

103.   Lumber Liquidators knew or, in the exercise of reasonable care, should have known that its Chinese Flooring was negligently designed and/or manufactured to allow for unsafe levels of formaldehyde emissions which will cause damage to Plaintiff's and Class Member's persons, wellbeing, and property and would not perform as expected by Plaintiff, Class Members and/or a reasonable consumer.

104.   Lumber Liquidators knew or, in the exercise of reasonable care, should have known that its Chinese Flooring was negligently designed and/or manufactured.

105.   Lumber Liquidators possessed the knowledge to cure the defect in the Chinese Flooring, but it continued to sell, to market and to advertise defective Chinese Flooring.

106.   Plaintiff disclaimed any purported Limited Warranties.

107.   As a direct, proximate, reasonably probable and foreseeable consequence of Lumber Liquidators' negligent acts and/or omissions in connection with its design, manufacture and distribution of its Chinese Flooring, Plaintiff and the Class Members have suffered and will continue to suffer loss and damage.

**FIFTH CAUSE OF ACTION**

**Fraudulent Misrepresentation**

108.   Plaintiff incorporates all preceding factual allegations as if fully set forth herein.

109.   Lumber Liquidators falsely and fraudulently represented to Plaintiff and other Class members that Lumber Liquidators' products would be free from defects and fit for their customary and normal use.  Lumber Liquidators also falsely and fraudulently represented to Plaintiff and other Class members that Lumber Liquidators' products complied with CARB and EU formaldehyde standards and all applicable laws and regulations. Plaintiff and other Class members reasonably relied upon Lumber Liquidators' representations.

110.   When said representations were made by Lumber Liquidators, upon information and belief, they knew those representations to be false and they willfully, wantonly, and recklessly disregarded whether the representations were true.

111.   These representations were made by Lumber Liquidators with the intent of defrauding and deceiving the Plaintiff, the Class members and/or the consuming public, all of which evinced reckless, willful, indifference to the safety and welfare of the Plaintiff and the Class members.

112.   At the time the aforesaid representations were made by Lumber Liquidators, Plaintiff and the Class members were unaware of the falsity of said representations and reasonably believed them to be true.

113.   In reliance upon said representations, the Plaintiff's and Class members' properties were built using Lumber Liquidators' Chinese Flooring, which were installed and used on Plaintiff's and the Class members' properties thereby sustaining damage and injury and/or being at an increased risk of sustaining damage and injury in the future.

114.   Lumber Liquidators knew and was aware, or should have been aware, that Lumber Liquidators' Chinese Flooring was defective and not fit for their customary and normal use.

115.   Lumber Liquidators knew, or should have known, that Lumber Liquidators' Chinese Flooring had a potential to, could, and would cause severe damage and injury to property owners.

116.   Lumber Liquidators brought its Chinese Flooring to the market and acted fraudulently, wantonly, and maliciously to the detriment of the Plaintiff and the Class members.

117.   By reason of the foregoing, Plaintiff and the Class members suffered, and continue to suffer, financial damage and injury.

## SIXTH CAUSE OF ACTION

### Negligent Misrepresentation

118.   Plaintiff incorporates all preceding factual allegations as if fully set forth

1    herein.

2        119.    Lumber Liquidators made representations about the Chinese Flooring to

3    Plaintiff, Class members, and their agents or predecessors, as set forth in this complaint.

4        120.    Those representations were false.

5        121.    When Lumber Liquidators made the representations, it knew they were untrue

6    or it had a reckless disregard for whether they were true, or it should have known they were

7    untrue.

8        122.    Lumber Liquidators knew that Plaintiff and other Class members were relying

9    on the representations.

10       123.    In reliance upon the representations, Plaintiff and other Class Members

11   purchased the Chinese Flooring and installed it in Plaintiff's and Class members' homes.

12       124.    As a direct and proximate result of Lumber Liquidators negligent

13   misrepresentations, Plaintiff and Class members have been damaged as set forth in this

14   Complaint.

15       125.    As a direct and proximate result of the foregoing, Plaintiff and the Class

16   Members suffered, and continue to suffer, financial damage and injury, and are entitled to all

17   damages, including punitive damage, in addition to costs, interest and fees, including

18   attorneys' fees, as allowed by law.

19                         **SEVENTH CAUSE OF ACTION**

20                      **Fraudulent Omission/Concealment**

21       126.    Plaintiff incorporates all preceding factual allegations as if fully set forth

22   herein.

23       127.    Lumber Liquidators knew or should have known that the Chinese Flooring was

24   defective in design, were not fit for their ordinary and intended use, and performed in

25   accordance with neither the advertisements, marketing materials and warranties disseminated

26   by Lumber Liquidators nor the reasonable expectations of ordinary consumers.

27       128.    Lumber Liquidators fraudulently concealed from and/or intentionally failed to

28   disclose to Plaintiff and the Class that the Chinese Flooring is defective.

129.   Lumber Liquidators had exclusive knowledge of the defective nature of the Chinese Flooring at the time of sale. The defect is latent and not something that Plaintiff or Class members, in the exercise of reasonable diligence, could have discovered independently prior to purchase, because it is not feasible.

130.   Lumber Liquidators had the capacity to, and did, deceive Plaintiff and Class members into believing that they were purchasing flooring free from defects.

131.   Lumber Liquidators undertook active and ongoing steps to conceal the defect. Plaintiff is aware of nothing in Lumber Liquidators' advertising, publicity or marketing materials that disclosed the truth about the defect, despite Lumber Liquidators' awareness of the problem.

132.   The facts concealed and/or not disclosed by Lumber Liquidators to Plaintiff and the Class members are material facts in that a reasonable person would have considered them important in deciding whether to purchase (or to pay the same price for) the flooring from their builders.

133.   Lumber Liquidators intentionally concealed and/or failed to disclose material factors for the purpose of inducing Plaintiff and the Class to act thereon.

134.   Plaintiff and the Class justifiably acted or relied upon the concealed and/or nondisclosed facts to their detriment, as evidenced by their purchase of the Chinese Flooring.

135.   Plaintiff and Class members suffered a loss of money in an amount to be proven at trial as a result of Defendant's fraudulent concealment and nondisclosure because: (a) they would not have purchased the Chinese Flooring on the same terms if the true facts concerning the defective flooring had been known; (b) they paid a price premium due to fact that the flooring would be free from defects; and (c) the flooring did not perform as promised. Plaintiff also would have initiated this suit earlier had the defect been disclosed to him.

136.   By reason of the foregoing, Plaintiff and the Class members suffered, and continue to suffer, financial damage and injury.

CLASS ACTION COMPLAINT

**EIGHTH CAUSE OF ACTION**

**Violation of Consumers Legal Remedies Act – Civil Code § 1750, *et seq*.**

**(On Behalf of Plaintiff and the California and Nationwide Classes)**

137.   Plaintiff incorporates all preceding factual allegations as if fully set forth herein.

138.   This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code § 1750, et seq. (the "CLRA") because Defendant's actions and conduct described herein constitute transactions that have resulted in the sale or lease of goods or services to consumers.

139.   Plaintiff and each member of the California Class are consumers as defined by California Civil Code §1761(d).

140.   The Products are goods within the meaning of Civil Code §1761(a).

141.   Defendant violated the CLRA in at least the following respects:

   a.     in violation of  §1770(a)(5), Defendant represented that the Products have characteristics, ingredients, and benefits (CARB compliant and defect free) which they do not have;

   b.     in violation of §1770(a)(7), Defendant represented that the Products are of a particular standard, quality or grade (CARB compliant and defect free) when they are of another;

   c.     in violation of §1770(a)(9), Defendant has advertised the Products (as being CARB compliant and defect free) with intent not to sell them as advertised; and

   d.     in violation of §1770(a)(16), Defendant represented that the Products have been supplied in accordance with previous representations (as CARB compliant and defect free), when they were not.

142.   Defendant knew, or should have known, that its representations and advertisements were false and misleading.

143.   On March 6, 2015, Plaintiff notified Defendant in writing, by certified mail, of

27

CLASS ACTION COMPLAINT

1    the violations alleged herein and demanded that Defendant remedy those violations.

2        144.    If Defendant fails to remedy the violations alleged herein within 30 days of

3    receipt of Plaintiff's notice, Plaintiff will amend this Complaint to add claims for actual,

4    punitive, and statutory damages pursuant to the CLRA.

5        145.    Defendant's conduct is malicious, fraudulent, and wanton in that Defendant

6    intentionally and knowingly provided misleading information to the public.

7                          **NINTH CAUSE OF ACTION**

8        **California False Advertising Law – Cal. Bus. & Prof. Code § 17500,** *et seq.*

9        **(On Behalf of Plaintiff and the California and Nationwide Classes)**

10       146.    Plaintiff incorporates all preceding factual allegations as if fully set forth

11   herein.

12       147.    Defendant publicly disseminated untrue or misleading advertising or intended

13   not to sell the Products as advertised in violation of California's False Advertising Law

14   ("FAL"), Business & Professional Code § 17500, *et seq.*, by representing that the Products are

15   "CARB compliant," when they are not.

16       148.    Defendant committed such violations of the False Advertising Law with actual

17   knowledge or in the exercise of reasonable care should have known was untrue or misleading.

18       149.    Plaintiff reasonably relied on Defendant's representations and/or omissions

19   made in violation of California Business & Professional Code § 17500, *et seq.*

20       150.    As a direct and proximate result of Defendant's violations, Plaintiff suffered

21   injury in fact and lost money.

22       151.    Plaintiff, on behalf of themselves and the California Class, seek:  (a) injunctive

23   relief in the form of an order requiring Defendant to cease the acts of unfair competition

24   alleged herein and to correct its advertising, promotion and marketing campaigns; (b) full

25   restitution of all monies paid by Plaintiff and all Class members because of Defendant's

26   deceptive practices including, but not limited to, disgorgement of all profits derived from the

27   sale of the Products; (c) interest at the highest rate allowable by law; and (d) the payment of

28   Plaintiff's attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure

28

1    Section 1021.5.

2                              **TENTH CAUSE OF ACTION**

3        **California Unfair Competition Law – Cal. Bus. & Prof. Code § 17200, *et seq.***

4              **(On Behalf of Plaintiff and the California and Nationwide Classes)**

5        152.    Plaintiff incorporates all preceding factual allegations as if fully set forth

6    herein.

7        153.    Defendant engaged in unlawful, unfair, and/or fraudulent conduct under

8    California's Unfair Competition Law ("UCL"), California Business & Professions Code §

9    17200, *et seq*.

10       154.    Defendant's conduct is unlawful in the following:

11              a.      Defendant's conduct is unlawful in that it violates the Consumers Legal

12              Remedies Act, California Civil Code §§ 1750, *et seq*., California's False

13              Advertising Law, California Business & Professions Code §§ 17500 *et seq*.;

14              b.      Defendant's Products, deceptive statements and sale of the Products

15              violate Title 17 of the California Code of Regulations, Sections 93120-

16              93120.12 et seq., specifically "Phase 2," which mandates that hardwood

17              flooring products like the Lumber Liquidators' Chinese-made Flooring

18              Products cannot emit formaldehyde at a level exceeding between 0.05 and 0.11

19              parts per million;

20              c.      Defendant's Products, deceptive statements and sale of the Products

21              violate California Health and Safety Code § 25249.6 (Proposition 65), which

22              requires that products emitting formaldehyde levels beyond 40 microgram per

23              day must contain a health hazard warning;

24              d.      Defendant's Products, deceptive statements and sale of the Products

25              violate 15 U.S.C. § 2697, which mandates that hardwood flooring products like

26              the Lumber Liquidators' Chinese-made Flooring Products cannot emit

27              formaldehyde at a level exceeding between 0.05 and 0.11 parts per million.

28       155.    Defendant's conduct is unfair in that it offends established public policy and/or

is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to Plaintiff and Class members, and offends public policy by seeking to profit from Chinese-made Flooring Products that emit dangerous levels of formaldehyde in violation of state and federal laws. The harm to Plaintiff and Class members arising from Defendant's conduct outweighs any legitimate benefit Defendant derived from the conduct.  Defendant's conduct undermines and violates the stated spirit and policies underlying the Consumers Legal Remedies Act, the False Advertising Law, and federal laws and regulations as alleged herein.

156.    Defendant's actions and practices constitute "fraudulent" business practices in violation of the UCL because, among other things, they are likely to deceive reasonable consumers.  Plaintiff relied on Defendant's representations and omissions.

157.    As a direct and proximate result of Defendant's violations, Plaintiff suffered injury in fact and lost money because they purchased the Products at the price they paid believing them to be CARB compliant when they were not.

158.    Plaintiff, on behalf of themselves and the California Class, seek:  (a) injunctive relief in the form of an order requiring Defendant to cease the acts of unfair competition alleged herein and to correct its advertising, promotion, and marketing campaigns; (b) full restitution of all monies paid by Plaintiff and all Class members because of Defendant's deceptive practices including, but not limited to, disgorgement of all profits derived from the sale of the Products; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure Section 1021.5.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the other members of the Classes proposed in this Complaint, respectfully requests that the Court enter judgment in their favor and against Defendants, as follows:

A.    Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representative and appointing the undersigned

CLASS ACTION COMPLAINT

counsel as Class Counsel;

B.      Ordering Defendants to pay actual damages (and no less than the statutory minimum damages) and equitable monetary relief to Plaintiff and the other members of the Class and Subclasses;

C.      Ordering Defendants to pay punitive damages, as allowable by law, to Plaintiff and the other members of these Classes;

D.      Ordering Defendants to pay statutory damages, as allowable by the statutes asserted herein, to Plaintiff and the other members of these Classes;

E.      Awarding injunctive relief as permitted by law or equity, including enjoining Defendants from continuing the unlawful practices as set forth herein, and ordering Defendants to engage in a corrective advertising campaign;

F.      Ordering Defendants to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Classes;

//

//

//

//

//

//

//

//

//

//

//

//

CLASS ACTION COMPLAINT

G.     Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded; and

H.     Ordering such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint that are so triable.

Dated: March 6, 2015                      Respectfully submitted,


**AHDOOT & WOLFSON, PC**



Robert Ahdoot
Tina Wolfson
Keith Custis, Of Counsel
Theodore W. Maya
1016 Palm Avenue
West Hollywood, California 90069
Tel: 310-474-9111
Fax: 310-474-8585

Counsel for Plaintiff and the Proposed Class

**AFFIDAVIT OF ROBERT AHDOOT**

I, Robert Ahdoot, declare as follows:

1.     I am an attorney with the law firm of Ahdoot & Wolfson, PC, counsel for Plaintiff Sara Latta ("Plaintiff") in this action.  I am admitted to practice law in California and before this Court, and am a member in good standing of the State Bar of California.  This declaration is made pursuant to California Civil Code Section 1780(d).  I make this declaration based on my research of public records and upon personal knowledge and, if called upon to do so, could and would testify competently thereto.

2.     Based on my research and personal knowledge, Defendant Lumber Liquidators, Inc. does business within Sacramento County and Plaintiff Latta purchased Defendant's products within Sacramento County, as alleged in the Class Action Complaint.

I declare under penalty of perjury under the laws of the United States and the State of California this 6th day of March 2015 in West Hollywood, California that the foregoing is true and correct.

By:  Robert Ahdoot